IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

ERNEST OBIAGWU,          :
                             :
    Plaintiff,          :
                             :
    v.                  :     **Case No. 5:24-CV-198-CAR**
                             :
BALDWIN MEMORIAL     :
CREMATORY, *et al.*        :
                             :
    Defendants.      :
_____:

## ORDER ON MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND MOTIONS FOR LEAVE TO AMEND COMPLAINT

Before the Court is Defendant Bostick Circle Nursing Center's Motion to Dismiss for Insufficient Service of Process. For the reasons explained below, the Court **DENIES** Bostick's Motion [Doc. 45]. The Court **CONSTRUES** *pro se* Plaintiff Ernest Obiagwu's Response to Defendant Bostick's Motion to Dismiss [Doc. 46] as (1) a Motion to Substitute the correct name of Defendant Bostick and (2) a Motion for Leave to File a Third Amended Complaint to assert new and revised claims against Defendants and to allege new facts. For the reasons explained below, the Court **GRANTS** Plaintiff's construed Motion to Substitute Defendant Bostick's current captioned name of "Bostick Circle Nursing Center" with "CorrectLife Bostick, LLC[.]" Plaintiff's construed Motion for Leave to File a Third Amended Complaint is **DENIED**.

1

Defendant Bostick Circle Nursing Center's name shall now appear as "CorrectLife Bostick, LLC" in the case caption of Plaintiff's Second Amended Complaint, and all pleadings or documents in this action are deemed amended to reflect this change. Thus, none of the pleadings or documents filed before entry of this Order need to be re-filed.

## BACKGROUND

On June 24, 2024, Plaintiff Ernest Obiagwu filed his Original Complaint alleging claims against Baldwin Memorial Crematory, Moores Funeral Home and Crematory, and Stewart Couey ("Moores Defendants") for negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress arising from the cremation of his brother Michael Knight.[1]

On December 16, 2024, after the Court granted his first Motion to Amend, Plaintiff filed his First Amended Complaint, adding Colette Lewis-Mitchell, Bostick's nursing home administrator, as a defendant and asserting claims for negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress against Colette Lewis-Mitchell and the Moores Defendants.[2] On January 3, 2025, a process server personally delivered the First Amended Complaint and summons for Lewis-Mitchell to

---

[1] Original Compl., [Doc. 1.]
[2] Mot. Amend Compl., [Doc. 10]; Order Pl.'s Mot. Amend Compl., [Doc. 11, December 13, 2024]; First Am. Compl., [Doc. 12.]

Lewis-Mitchell at Bostick Nursing Center located at 1700 Bostick Circle, Milledgeville, Georgia 31061.[3]

In March, Plaintiff filed his second Motion to Amend Complaint to add as a defendant and assert claims against "Bostick Circle Nursing Center."[4] In April, the Court granted Plaintiff's request to add Bostick and assert claims for intentional infliction of emotional distress and respondeat superior but denied Plaintiff's request to assert claims against Bostick for negligent infliction of emotional distress and ordinary negligence because Plaintiff failed to state a claim for relief.[5] In addition, the Court construed Plaintiff's *pro se* allegations to raise claims for negligent mishandling of a corpse and interference with the right of burial against all Defendants and allowed those claims to proceed.[6]

On July 15, 2025, a process server personally delivered the Second Amended Complaint and summons for "Bostick Circle Nursing Center" to Colette Lewis-Mitchell at Bostick Nursing Center after she identified herself as the person authorized to accept service of process.[7]

---

[3] Proof of Service, [Doc. 17.]

[4] Mot. Amend Case Caption, [Doc. 26.] Plaintiff filed his Motion to Amend Case Caption in March. *Id.* The Court construed this Motion as a Motion to Amend Complaint and directed Plaintiff to file his Second Amended Complaint as a separate entry on the docket. Order Def. Lewis-Mitchell's Mot. Set Aside Default and Pl.'s Mot. Default J. and Mot. Amend Case Caption at 1-2, [Doc. 33.] In April, Plaintiff filed his Second Amended Complaint. [Doc. 35.]

[5] Order Pl.'s Mot. Amend Compl. at 1-2, [Doc. 37.]

[6] *Id.*

[7] Proof of Service at 1, [Doc. 84]; Summons [Doc. 43.]

On August 4, 2025, Bostick filed the currently pending Motion to Dismiss for Insufficient Service of Process under Fed. R. Civ. P. 12(b)(5) pointing out that Plaintiff named "Bostick Circle Nursing Center[,]" a non-existent entity, in the Second Amended Complaint and summons instead of "CorrectLife Bostick, LLC[,]" the appropriate corporate entity.[8] Bostick filed an Affidavit of Stacy Scott, Bostick's Chief Legal Officer, to support its Motion.[9]

On August 9, 2025, Plaintiff filed his Response and attached a proposed Third Amended Complaint requesting this Court to grant leave (1) "to substitute the correct corporate entity, CorrectLife Bostick, LLC, for the improperly named defendant[]" and (2) to file a Third Amended Complaint.[10] In his Third Amended Complaint, Plaintiff revised claims, asserted new claims for negligent training and supervision against Defendants Bostick and Moores Funeral Home and Crematory, and alleged new facts to support those claims.[11]

At the time Plaintiff filed his proposed Third Amended Complaint on August 9, 2025, the time for amendments to the pleadings had been expired for 225 days, the time

---

[8] Mot. Dismiss Insufficient Service Process, [Doc. 45.] After the Court directed Plaintiff to show cause why his claims against Bostick should not be dismissed for failure to perfect service, Plaintiff filed both proof of service on Bostick and his Response to the Court's show cause order. O.S.C., [Doc. 82]; Pl.'s Resp. O.S.C., [Doc. 83]; [Doc. 84.]

[9] Scott's Aff., [Doc. 45-1.]

[10] Pl.'s Resp. Bostick's Mot. Dismiss Insufficient Service Process at 1, [Doc. 46]; Proposed Order, [Doc. 46-1]; Third Am. Compl., [Doc. 46-2.]

[11] Doc. 46-2.

for discovery had been expired for 15 days, and the deadline for filing dispositive motions was to expire in only 16 days on August 25, 2025.[12] Currently, Plaintiff and all Defendants have filed pending summary judgment motions.[13]

## DISCUSSION

### I. Motion to Dismiss for Insufficient Service of Process [Doc. 45]

Bostick seeks dismissal of Plaintiff's claims "for insufficient service of process under Rule 12(b)(5)."[14] Bostick argues (1) Plaintiff's method of delivery of process (the summons and complaint) was insufficient because Plaintiff's personal service on a nursing home administrator at the nursing home facility was insufficient under Georgia law and Fed. R. Civ. P. 4, and (2) the content of Plaintiff's process was insufficient because the summons and complaint did not name the correct legal entity, "CorrectLife Bostick, LLC," but instead named a non-existent entity, "Bostick Circle Nursing Center."[15] Although Bostick only brought its motion under Rule 12(b)(5), this Court will analyze both of Bostick's arguments, the latter of which should have been brought under Rule

---

[12] Scheduling and Disc. Order at 5, [Doc. 9, Oct. 28, 2024] (providing "[a]ll motions seeking to amend the pleadings or to join parties must be filed no later than December 27, 2024"); Order Granting Mot. Extension Time Complete Disc., [Doc. 39, April 4, 2025.] The Court "extend[ed] the deadline for the parties to complete discovery until [July 25, 2025] and stated "[a]ny dispositive or *Daubert* motions [were] due by [August 25, 2025]." [Doc. 39.]

[13] Mot. Summ. J., [Doc. 50]; Mot. Summ. J., [Doc. 59.]; Mot. Summ. J., [Doc. 48]; Mot. Summ. J., [Doc. 67]; Mot. Summ. J., [Doc. 77.]

[14] Doc. 45 at 5.

[15] *Id.*

5

12(b)(4).[16] For the reasons explained below, this Court finds it would be improper to dismiss Plaintiff's claims against Bostick under either Rule 12(b)(5) or Rule 12(b)(4).

## Legal Standard

"Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when the defendant has not been served."[17] Thus, when a court finds insufficient service, it is "improper for the district court to . . . reach[] the merits in th[e] case and to . . . issue[] a dismissal with prejudice[]"[18] "[b]ecause jurisdiction depends on sufficient service of process."[19] Moreover, "[a] defendant's actual notice [of the suit] is not sufficient to cure defectively executed service."[20] "When service of process is challenged, the plaintiff must bear the burden of establishing its validity."[21] "[A] plaintiff's *pro se* status does not lessen this burden" because *pro se* litigants are "required

---

[16] Bostick does not argue that Plaintiff's attempted service of process was untimely. *Id.*

[17] *Pardazi v. Cullman Med. Ctr.*, 896 F.3d 1313, 1317 (11th Cir. 1990); *see also Rumbough v. Comenity Cap. Bank*, 748 F. App'x 253, 256 (11th Cir. 2018) (same); *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 921 (11th Cir. 2003) (same); *Fuqua v. Turner*, 996 F.3d 1140, 1154 (11th Cir. 2021) (same).

[18] *Jackson v. Warden, FCC Coleman–USP*, 259 Fed. Appx. 181, 182–83 (11th Cir. 2007); *see also Glover v. City of Abbeville*, No. 5:19-CV-277-MTT, 2020 WL 1876253, at *3 (M.D. Ga. Apr. 15, 2020) (same) (quoting *Jackson v. Johns*, 259 F. App'x 181, 182–83 (11th Cir. 2007)); *Downing v. Thompson*, No. 5:23-CV-00501-TES, 2024 WL 3700199, at *5 (M.D. Ga. Aug. 7, 2024) (same).

[19] *Fuqua*, 996 F.3d at 1156.

[20] *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007).

[21] *Reeves v. Wilbanks*, 542 F. App'x 742, 746 (11th Cir. 2013) (quoting *Aetna Business Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981)); *see also Harris v. Fort Pierce Police Dep't*, No. 23-10727, 2023 WL 7153928, at *1 (11th Cir. Oct. 31, 2023) (same); *Downing*, 2024 WL 3700199, at *5 ("Although a defendant first bears the burden of specifying the particular ways that the plaintiff failed to satisfy the procedural requirements of Rule 4, once the defendant does so, the plaintiff ultimately bears the burden of proving valid and adequate service of process.") (citing *Glover*, 2020 WL 1876253, at *3).

. . . to conform to procedural rules[.]"[22] "The Court may look to affidavits, depositions, and oral testimony to resolve . . . disputed questions of fact[]"when ruling upon a Rule 12(b)(4) or Rule 12(b)(5) motion.[23]

Regarding "insufficient service of process," Rule 12(b)(5) allows a defendant to challenge service of process on the ground that the plaintiff's method of delivering the summons and complaint failed to comply with Rule 4 of the Federal Rules of Civil Procedure.[24] Regarding "insufficient process[,]" Rule 12(b)(4) "concerns the form of the process (the summons itself and the accompanying complaint)[.]"[25] Rule 12(b)(4) is the proper vehicle "when a defendant is arguing that the summons is not properly filled out, doesn't contain the right information, or is otherwise defective in its content[.]"[26]

---

[22] *Downing*, 2024 WL 3700199, at *5; *Albra*, 490 F.3d at 829 (quoting *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir.2002)); *see also Reeves*, 542 F. App'x at 747 (same).

[23] *Vourakis v. Little Italy Pizzeria*, No. 2:18-CV-195-RWS-JCF, 2019 WL 13271702, at *9 (N.D. Ga. May 14, 2019), *report and recommendation adopted*, No. 2:18-CV-195-RWS-JCF, 2019 WL 13271051 (N.D. Ga. June 11, 2019); *see also Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008) ("[A] judge may make factual findings necessary to resolve motions to dismiss for lack of personal jurisdiction, improper venue, and ineffective service of process[,]" and "any 'factual question raised by the affidavits or other evidence presented on a Rule 12(b)(4) or a Rule 12(b)(5) motion should be determined by the district court[.]'") (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 at 340, 345 (3d ed. 2004)); *Travelers Cas. & Sur. Co. of Am. v. Telstar Const. Co.*, 252 F. Supp. 2d 917, 922 (D. Ariz. 2003) ("[P]arties may submit affidavits and exhibits with a motion to dismiss under Rule 12(b)(5)[.]"); *Whatley's Interiors, Inc. v. Anderson*, 176 Ga. App. 406, 407 (1985) ("Where the evidence is conflicting with respect to the authority of an employee to receive service, the issue becomes one of fact to be resolved by the trial judge."); *Brown v. Town of Amherst*, No. 1:23-CV-00993 EAW, 2024 WL 4308310, at *8 (W.D.N.Y. Sept. 26, 2024) ("[I]n considering a Rule 12(b)(5) motion, a court may also look to materials outside the complaint to determine whether it has jurisdiction."); *Citibank N.A. v. Hello Flatbush LLC*, No. 23-CV-10920 (AS), 2024 WL 3362624, at *3 (S.D.N.Y. July 10, 2024) ("[T]he Court may look to materials outside of the pleadings to determine whether proper service has occurred.").

[24] Fed. R. Civ. P. 12(b)(5); *Downing*, 2024 WL 3700199, at *5 (distinguishing between Rule 12(b)(4) and Rule 12(b)(5) motions).

[25] *Downing*, 2024 WL 3700199, at *5.

[26] *Id.*

## A. Insufficient Service of Process – Rule 12(b)(5)

Bostick, a Georgia limited liability company, argues Plaintiff's service of process was insufficient because "[s]ervice on a nursing home administrator—without more—is legally deficient under both Federal and Georgia law."[27] But after considering the affidavits in the record, this Court finds Plaintiff properly served Bostick with process under Ga. Code Ann. § 9-11-4(e)(1) and thus, Fed. R. Civ. P. 4, when his process server personally served Lewis-Mitchell, a "managing agent" of Bostick, at Bostick's nursing home facility.

Under Rule 4(h)(1)(A) of the Federal Rules of Civil Procedure, a corporation, partnership, or association may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual[.]"[28] Rule 4(e)(1) permits service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."[29]

In accordance with the Georgia Civil Practice Act, "[p]laintiffs may . . . serve [Georgia] limited liability companies pursuant to [Ga. Code Ann.] § 9-11-4(e)(1)[.]"[30] Ga.

---

[27] Doc. 45 at 5.

[28] Fed. R. Civ. P. 4(h)(1)(A).

[29] Fed. R. Civ. P. 4(e)(1).

[30] *Anthony Hill Grading, Inc. v. SBS Invs., LLC*, 678 S.E.2d 174, 177 (Ga. App. 2009). Ga. Code Ann. § 14–11–209(f) also authorizes Plaintiffs to perfect service upon a limited liability company through serving its registered agent, or if that cannot be done with reasonable diligence, the Secretary of State. Ga. Code Ann. § 14–11–209(f). However, "[s]ervice under [Ga. Code Ann.] § 14–11–209(f) is not . . . 'the only means, or necessarily the required means, of serving any process, notice, or demand required or permitted by law to be served on a limited liability company.'" *Anthony Hill Grading, Inc.*, 678 S.E.2d at 177 (quoting Ga. Code

Code Ann. § 9-11-4(e)(1) allows a plaintiff to serve a Georgia corporate defendant "by delivering a copy of the summons attached to a copy of the complaint . . . to a managing agent" of the corporate defendant.[31] As used in Section 9-11-4(e)(1), "the term 'managing agent' means a person employed by a corporation or a foreign corporation who is at an office or facility in this state and who has managerial or supervisory authority for such corporation or foreign corporation[.]"[32]

Under Section 9-11-4(e)(1), "service of process 'must be made on an [employee] whose position is such as to afford *reasonable* assurance that he will inform his corporate principal that such process has been served upon him.'"[33] Thus, in determining whether an employee is a "managing agent[]" within the statute's meaning, Georgia Courts "look[] to whether the employee 'occup[ied] some position of managerial or supervisory responsibility within the organization.'"[34]

---

Ann. § 14–11–209(h)); *see also Williams v. Abebe Sandy Ventures, LLC*, 884 S.E.2d 576, 578 (Ga. App. 2023) ("[Ga. Code Ann. § 9-11-4(e)(1)(A)] may be employed to serve limited liability companies, as well as corporations.") (citing *Anthony Hill Grading, Inc.*, 678 S.E.2d at 177).

[31] Ga. Code Ann. § 9-11-4(e)(1)(A).

[32] Ga. Code Ann. § 9-11-4(e)(1)(B); *see also S. D. E., Inc. v. Finley*, 340 Ga. App. 684, 686 (2017) ("The former version of the statute, under which the most recent case law was decided, provided that service on a Georgia corporation could be made upon "the president or other officer of the corporation, secretary, cashier, managing agent or other agent thereof." The 2013 revision to the statute omitted ''cashier,'' ''secretary,'' and "other agent," and added "registered agent.") (citing Ga. L. 2013, p. 591, § 1/SB 113).

[33] *S. D. E., Inc. v. Finley*, 340 Ga. App. 684, 686 (2017) (quoting *Scott v. Atlanta Dairies Cooperative*, 239 Ga. 721, 724 (1977)) (emphasis in original); *see also GMAC Mortg. Corp. v. Bongiorno*, 277 Ga. App. 328, 330 (2006) ("The employee's position must be such as to afford reasonable assurance that he will inform his corporate principal that such process has been served on him.").

[34] *Finley*, 340 Ga. App. at 686 (quoting *G. J. Soracco, M. D., P. C. v. Domineck*, 233 Ga. App. 166, 167 (1998)); *see also Bongiorno*, 277 Ga. App. at 330 ("In order for an employee to be authorized to accept service on

"The Georgia cases do not create a high threshold for the amount of authority necessary to make an employee a valid agent to receive service of process."[35] The Georgia Court of Appeals has held that a shift manager at a fast food restaurant was a "managing agent" within the meaning of Section 9-11-4(e)(1) because she "was responsible for supervising the other employees on her shift and had managerial responsibilities, including handling customer complaints, quality control, and creating reports for upper management."[36]

Lewis-Mitchell's actions on behalf of Bostick show she occupied a "position of managerial or supervisory responsibility within the organization."[37] Lewis-Mitchell admitted in an Affidavit that she communicated with a cremation services contractor on behalf of Bostick and signed an important legal document, specifically a cremation authorization form, on behalf of Bostick.[38] Lewis-Mitchell further stated she "was aware

---

behalf of a corporation, it is necessary that he occupy some managerial or supervisory responsibility within the organization.").

[35] *Henderson v. Cherry Bekaert & Holland*, 932 F.2d 1410, 1412 (11th Cir. 1991) (collecting cases) (citations omitted).

[36] *Finley*, 340 Ga. App. at 688; *see also Ogles v. Globe Oil Co.*, 171 Ga. App. 785, 786 (1984) (holding that serving the manager of a company store who was responsible for daily operations, supervising employees, and submitting daily reports to corporate headquarters was sufficient); *Scott v. Atlanta Dairies Coop.*, 239 Ga. 721 (1977) (service proper on employee "charged with scheduling the pickup of milk from Putnam County producers"); *GMAC Mortg. Corp. v. Bongiorno*, 277 Ga. App. 328, 330 (2006) (holding that "[a]s a branch manager, [the employee] clearly occupied some managerial or supervisory responsibility within [the bank]"and thus, that the trial court was authorized to find service on the local branch manager was valid service on the bank); *Sobh Auto, LLC v. Green*, 908 S.E.2d 688, 692 (Ga. Ct. App. 2024) (holding that service upon a car dealership was proper when the summons and a copy of the complaint were left with the dealership's finance manager).

[37] *Finley*, 340 Ga. App. at 686.

[38] Lewis-Mitchell's Aff., [Doc. 56-2]; *see also* Couey's Aff., [Doc. 48-9.]

of a letter agreement between Bostick Nursing Center and Moores [Funeral Home] which [she] believed obligated [her] to sign the authorization."[39] Her awareness of the agreement and her perception that she was responsible for signing the authorization indicate that she occupied a managerial role within the organization. Thus, Lewis-Mitchell's actions on behalf of Bostick strongly suggest her position as a nursing home administrator included managerial responsibilities.[40]

Furthermore, Lewis-Mitchell's "position is such as to afford reasonable assurance that [s]he will inform h[er] corporate principal that such process has been served upon [her]."[41] As a Defendant in this action, Lewis-Mitchell accepted service of process for herself at Bostick Nursing Center on January 3, 2025.[42] Indeed, she stated in an Affidavit "[her] actions in [immediately] reporting and forwarding the [current] lawsuit" to her supervisor "were consistent with [her] prior handling of legal documents [she] [has] received regarding Bostick Circle Nursing Center patients."[43] This statement suggests she has accepted service of process for Bostick and promptly notified her supervisor on prior occasions. Lewis-Mitchell's statement also corroborates the process server's statement in

---

[39] Doc. 56-2.

[40] Notably, in her Response to Plaintiff's First Interrogatories, Defendant Colette Lewis-Mitchell stated that her "job responsibilities" as a nursing home administrator "included but were not limited to overseeing daily operations, managing staff, budget management, compliance, and quality improvement." Def. Lewis-Mitchell's Resp. Pl.'s First Interrogs. ¶1, at 2, [Doc. 56-9.]

[41] *Finley*, 340 Ga. App. at 686 (quoting *Scott v. Atlanta Dairies Cooperative*, 239 Ga. 721, 724 (1977)).

[42] Doc. 17.

[43] Lewis-Mitchell's Aff. ¶¶ 3-7, [Doc. 19-2.]

11

his Affidavit that she "identified [herself] as the person authorized to accept service" when the process server personally delivered process to her at Bostick's nursing home facility located at 1700 Bostick Circle, Milledgeville, GA 31061 on July 15, 2025.[44]

Bostick simply points to Stacy Scott's Affidavit attached to its Motion to Dismiss wherein she conclusively states Lewis-Mitchell "is not . . . a managing agent of CorrectLife Bostick[]" and provides no evidence to substantiate it.[45] The record evidence shows Lewis-Mitchell, Bostick's nursing home administrator, occupied a position of managerial or supervisory responsibility within Bostick Nursing Center, a facility owned and/or operated by CorrectLife Bostick, LLC, and thus was a "managing agent" within the meaning of Section 9-11-4(e)(1). Because Plaintiff's process server personally served a "managing agent" of Bostick, Plaintiff's service on Bostick was sufficient.

## B. Insufficient Process – Rule 12(b)(4)

Bostick also appears to argue Plaintiff's claims should be dismissed for insufficient process because its name was defective in the summons. But because Bostick did not suffer any prejudice arising from the defective name, its argument is unpersuasive.

---

[44] Doc. 83 at 1.
[45] Doc. 45-1 ¶ 7. In her Affidavit, Stacy Scott, Bostick's Chief Legal Officer, states as follows: "As a nursing home administrator, Collette Lewis Mitchell is not the president of CorrectLife Bostick, LLC, or a managing agent of CorrectLife Bostick. Nor is Colette Lewis Mitchell authorized to accept service on behalf of CorrectLife Bostick, LLC." *Id.*

"[A] Rule 12(b)(4) motion is appropriate only where the summons is defective."[46] "Indeed, 'a Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons.'"[47] "[A] defendant must establish actual prejudice when seeking a dismissal [for insufficient process] under Rule 12(b)(4)."[48] "A defendant who had complete knowledge of the claims against it cannot demonstrate actual prejudice."[49]

Bostick had complete knowledge of Plaintiff's claims against it. CorrectLife Bostick, LLC, does business as "Bostick Nursing Center." CorrectLife Bostick, LLC, entered into a cremation services agreement with Moores Funeral Home, Inc., using the name of "Bostick Nursing Center[.]"[50] Moreover, Stacy Scott, the Chief Legal Officer for CorrectLife Bostick, LLC, stated in her Affidavit, "Collette [sic] Lewis-Mitchell is an employee of CorrectLife Bostick, LLC, and serves as a facility administrator at Bostick Nursing Center."[51] Bostick's facility is named "Bostick Nursing Center" and located at

---

[46] *Mortensen v. Mortg. Elecs. Registration Sys., Inc.*, No. CIV.A. 09-0787-WS-N, 2010 WL 3339492, at *1 (S.D. Ala. Aug. 23, 2010).

[47] *Id.* at *1 (quoting *Olson v. Federal Election Com'n*, 256 F.R.D. 8, 10 n.3 (D.D.C. 2009)); *see also* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1353 (4th ed.).

[48] *Russell v. Quest Diagnostics Inc.*, No. 1:23-CV-00599-VMC, 2024 WL 6882840, at *2 (N.D. Ga. Jan. 4, 2024), *reconsideration denied sub nom. Russell v. Quest Diagnostics Inc.*, No. 1:23-CV-00599-VMC, 2024 WL 6882839 (N.D. Ga. Apr. 29, 2024).

[49] *Russell*, 2024 WL 6882840, at *2 (citing *Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 900 (11th Cir. 1990)).

[50] *See* Couey's Aff. ¶ 3-4, [Doc. 48-9]; Couey's Aff. Ex. 1, [Doc. 48-9] (a copy of the cremation services agreement).

[51] Doc. 45-1 ¶ 6.

13

1700 Bostick Circle, Milledgeville, Georgia 31061.[52] Plaintiff misnamed CorrectLife Bostick, LLC as "Bostick Circle Nursing Center[]" in the summons.[53] But if one removes the word "Circle" from its current captioned name, Plaintiff named CorrectLife Bostick, LLC, using its "doing business as" name in the summons and complaint.

Because Plaintiff used, in essence, Bostick's "doing business as" name and listed the correct address of Bostick's facility in the summons, Bostick cannot claim that Bostick was confused about whether Plaintiff was asserting claims against it in the Second Amended Complaint or otherwise lacked knowledge of Plaintiff's claims against it after receiving the complaint. Bostick does not argue Plaintiff's use of Bostick's "doing business as" name in the summons caused Bostick actual prejudice. Bostick does not contend that it did not receive actual notice of the claims against it or that such notice was delayed because of the misnomer. The record shows that Bostick received service of process (the summons and Second Amended Complaint) on July 15, 2025. Thereafter, Bostick had complete and total knowledge of Plaintiff's claims against it.

Because it is undisputed that Bostick had complete and total knowledge of Plaintiff's claims against it, Bostick suffered no actual prejudice from the misnomer in the

---

[52] Doc. 45-1; Doc. 84
[53] Doc. 43; Doc. 35.

summons. Therefore, it would be improper for the Court to dismiss Plaintiff's claims against Bostick under Rule 12(b)(4).

## II. Motions for Leave to Amend Complaint [Doc. 46]

Plaintiff requests leave to amend his Second Amended Complaint (1) "to substitute the correct corporate entity, CorrectLife Bostick, LLC, for the improperly named defendant[]" and (2) to file his Third Amended Complaint.[54] Because Plaintiff acted diligently to correct the misnomer when he first became aware of the issue, this Court finds good cause exists and **GRANTS** Plaintiff's construed Motion to Substitute the correct name of Defendant Bostick [Doc. 46]. But because Plaintiff does not identify, and this Court does not find, any good cause to justify granting leave to file a Third Amended Complaint so late in this case's progression, the Court **DENIES** Plaintiff's construed Motion for Leave to File a Third Amended Complaint [Doc. 46].

## Legal Standard

Typically, the liberal standard under Fed. R. Civ. P. 15(a) governs whether a court should grant leave to amend. Under Rule 15(a), the court should freely give leave to amend when justice so requires.[55] However, when a motion to amend is filed after the time set forth in the Court's scheduling order, as here, the party must first demonstrate

---

[54] Doc. 46 at 1; Doc. 46-1; Doc. 46-2.
[55] Fed. R. Civ. P. 15(a).

"good cause" under Rule 16(b).[56] The good cause standard "precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'"[57] If "good cause" exists, Rule 15(a)(2) gives the Court "extensive discretion" to permit a plaintiff to amend a pleading.[58] Factors such as undue delay, undue prejudice to the opposing party, and futility of the amendments may be considered when deciding a motion to amend.[59]

## A. Motion to Substitute Correct Name of Bostick [Doc. 46]

Plaintiff requests leave to amend his Complaint "to substitute the correct corporate entity, CorrectLife Bostick, LLC, for the improperly named defendant[.]"[60] Because Plaintiff acted diligently to correct the misnomer when he first became aware of the issue, the Court finds good cause exists to grant Plaintiff's Motion.

Plaintiff appears to have first learned of the misnomer when Bostick raised the issue in its Motion to Dismiss filed on August 4, 2025. Five days later on August 9, 2025, Plaintiff requested this Court to grant him leave to amend his Complaint to correct the name.[61] Correcting this misnomer will not cause undue delay or prejudice to Bostick because Bostick knew Plaintiff added it as a defendant in this action on the date Bostick

---

[56] *See* Fed. R. Civ. P. 16(b)(4); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998).
[57] *Sosa*, 133 F.3d at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's notes).
[58] *See Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999).
[59] *Foman v. Davis*, 371 U.S. 178, 182 (1962).
[60] Doc. 46 at 1.
[61] Doc. 45; Doc. 46.

received service of process, if not before, and no Defendant will be required to file a new responsive pleading due to the requested amendment. In addition, no misidentification issues exist because Plaintiff used, in essence, the "doing business as" name of "Bostick Circle Nursing Center" for CorrectLife Bostick, LLC, the correct name of the party before the Court.

## B. Motion for Leave to File Third Amended Complaint [Doc. 46]

Finally, Plaintiff requests leave to file a Third Amended Complaint, asserting new and revised claims against Defendants and alleging new facts.[62] But Plaintiff fails to identify any applicable reason why good cause exists to justify granting such request so late in this case's progression, and this Court finds none.

Even if Plaintiff had shown good cause, granting him leave to file his Third Amended Complaint, asserting new and revised claims against Defendants and alleging new facts, would prejudice all Defendants and cause undue delay. When Plaintiff filed his construed Motions to Amend on August 9, 2025, the time for amendments to the pleadings had been expired for 225 days, the time for discovery had been expired for 15 days, and the deadline for filing dispositive motions was to expire in only 16 days on August 25, 2025.[63] Currently, Plaintiff and all Defendants have filed pending summary

---

[62] See Doc. 46; Doc. 46-1; Doc. 46-2.

[63] Scheduling and Disc. Order at 5, [Doc. 9, Oct. 28, 2024] (providing "[a]ll motions seeking to amend the pleadings or to join parties must be filed no later than December 27, 2024"); Order Granting Mot. Extension Time Complete Disc., [Doc. 39, April 4, 2025.] The Court "extend[ed] the deadline for the parties to complete

judgment motions.[64] Allowing Plaintiff to file new and revised claims against Defendants would cause undue delay and prejudice to Defendants because discovery would need to be re-opened, and Defendants would have to file new responsive pleadings and prepare new dispositive motions. Thus, the Court would deny his motion even under the much less stringent Rule 15(a)(2) standard.

## CONCLUSION

For the reasons explained above, the Court **DENIES** Bostick's Motion to Dismiss for Insufficient Service of Process [Doc. 45]. The Court **CONSTRUES** *pro se* Plaintiff Ernest Obiagwu's Response to Defendant Bostick's Motion to Dismiss [Doc. 46] as (1) a Motion to Substitute the correct name of Defendant Bostick and (2) a Motion for Leave to File a Third Amended Complaint to assert new and revised claims against Defendants and to allege new facts. For the reasons explained above, the Court **GRANTS** Plaintiff's construed Motion to Substitute Defendant Bostick's current captioned name of "Bostick Circle Nursing Center" with "CorrectLife Bostick, LLC[.]" Plaintiff's construed Motion for Leave to File a Third Amended Complaint is **DENIED**.

Defendant Bostick Circle Nursing Center's name shall now appear as "CorrectLife Bostick, LLC" in the case caption of Plaintiff's Second Amended Complaint, and all

---

discovery until [July 25, 2025] and stated "[a]ny dispositive or *Daubert* motions are due by [August 25, 2025]." [Doc. 39.]

[64] Mot. Summ. J., [Doc. 50]; Mot. Summ. J., [Doc. 59.]; Mot. Summ. J., [Doc. 48]; Mot. Summ. J., [Doc. 67]; Mot. Summ. J., [Doc. 77.]

pleadings or documents in this action are deemed amended to reflect this change. Thus,

none of the pleadings or documents filed before entry of this Order need to be re-filed.

      **SO ORDERED,** this 31st day of October, 2025.

s/ C. Ashley Royal_____
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT
