IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ERNEST OBIAGWU, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:24-CV-198-CAR |
| | : | |
| BALDWIN MEMORIAL | : | |
| CREMATORY, MOORES FUNERAL | : | |
| HOME AND CREMATORY, | : | |
| STEWART COUEY, COLETTE | : | |
| LEWIS MITCHELL, CORRECTLIFE | : | |
| BOSTICK LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

In this diversity case, *pro se* Plaintiff Ernest Obiagwu asserts claims under Georgia

law for (1) interference with the right of burial; (2) negligent mishandling of a corpse; (3)

intentional infliction of emotional distress; and (4) negligence and/or negligent infliction

of emotional distress arising from his brother's cremation.

Currently before the Court are Defendants Baldwin Memorial Crematory, Moores

Funeral Home and Crematory, and Stewart Couey, Moores' funeral director's, ("the

Moores Defendants'") Motion for Summary Judgment [Doc. 48]; Defendant CorrectLife

Bostick LLC's, a nursing home, ("Bostick") Motion for Summary Judgment [Doc. 77];

Defendant Colette Lewis-Mitchell's, Bostick's nursing home administrator, Motion for

1

Summary Judgment [Doc. 67]; Plaintiff's Motion for Summary Judgment against Defendants Colette Lewis-Mitchell and CorrectLife Bostick LLC [Doc. 50]; and Plaintiff's Motion for Summary Judgment against the Moores Defendants [Doc. 59]. As explained below, all Defendants are entitled to summary judgment because Plaintiff (1) lacks standing to bring his claims for interference with the right of burial; (2) fails to establish any Defendant negligently breached a contract regarding the disposition of his brother's remains to sustain his negligent mishandling of a corpse claims; (3) fails to establish he suffered severe emotional distress to sustain his intentional infliction of emotional distress claims; and (4) Georgia's impact rule bars Plaintiff's claims for negligence and/or negligent infliction of emotional distress. Thus, the Court **GRANTS** the Defendants' Motions for Summary Judgment [Docs. 48, 67, 77] and **DENIES** Plaintiff's Motions for Summary Judgment [Docs. 50, 59].

## STANDARD

Summary judgment is proper if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[1] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

which it believes demonstrate the absence of a genuine issue of material fact" and that entitles it to a judgment as a matter of law.[2] If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[3]

The Court must view the facts, and any reasonable inferences drawn from those facts, in the light most favorable to the party opposing the motion.[4] "The inferences, however, must be supported by the record, and a genuine dispute of material fact requires more than 'some metaphysical doubt as to the material facts.'"[5] In cases where opposing parties tell different versions of the same events, and one is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts."[6] A disputed fact will preclude summary judgment only "if the dispute might affect the outcome of the suit under the governing law."[7] "The court may not resolve any material factual dispute, but must deny the motion and proceed to trial if it finds that such an issue exists."[8] Ultimately, summary judgment must be entered

---

[2] *Catrett,* 477 U.S. at 323 (internal quotation marks omitted).

[3] *See* Fed. R. Civ. P. 56(e); *see also Catrett,* 477 U.S. at 324-26.

[4] *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010); *Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 (11th Cir. 1992).

[5] *Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) (quoting *Penley*, 605 F.3d at 848).

[6] *Pourmoghani-Esfahani v. Gee*, 625 F.2d 1313, 1315 (11th Cir. 2010) (per curiam) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

[7] *Id*. (internal quotation marks omitted).

[8] *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[9]

The standard for "cross-motions for summary judgment does not differ from the standard applied when only one party files a motion."[10] Accordingly, "the district court must methodically take each motion in turn and construe all the facts in favor of the non-movant for each."[11] "If, after engaging in this analysis, the district court determines no genuine issue of material fact exists, then it may appropriately enter summary judgment for a party."[12]

## BACKGROUND

On August 10, 2022, Michael Redford Knight, Plaintiff's brother,[13] was reported deceased at Bostick Nursing Center, a nursing home facility in Milledgeville, Georgia.[14] Kenisha Sanford, a nurse at Bostick, contacted Plaintiff, a resident of Philadelphia, Pennsylvania, over the phone and notified him of Knight's death.[15] Plaintiff then authorized the transfer of Knight's remains to Moores Funeral Home, a funeral home and

---

[9] *Celotex*, 477 U.S. at 323.

[10] *See Occidental Fire & Cas. Co. of N. Carolina v. Dixie Way Motors, Inc.*, 676 F. Supp. 3d 1240, 1245 (S.D. Fla. 2023); *Scottsdale Ins. Co. v. Cutz, LLC*, 543 F. Supp. 2d 1310, 1313 (S.D. Fla. 2007).

[11] *Thai Meditation Ass'n of Alabama, Inc. v. City of Mobile, Alabama*, 83 F.4th 922, 926 (11th Cir. 2023).

[12] *Id.*

[13] Whether Michael Redford Knight was Plaintiff Ernest Obiagwu's biological brother is a disputed question of fact. The Court accepts this fact as true for the purpose of summary judgment.

[14] Second Am. Compl. at ¶2, [Doc. 35]; Pl.'s Dep. 56:14-17 [Doc. 48-3].

[15] Pl.'s Dep. 58:1-25, 59:1-11, [Doc. 48-3]; Second Am. Compl. at ¶4, [Doc. 35]; Pl.'s Dep., Ex. 2 at 3, [Doc. 48-5].

crematory in Milledgeville, Georgia.[16] On the same day, Bostick contacted Moores, and Moores received custody of Knight's remains from Bostick.[17]

Two days later, on August 12, 2022, Plaintiff and Chinyere Udeh, Plaintiff's wife, called Bostick and spoke with Kenyatta Moss, a visiting social worker at Bostick, over the phone.[18] After they discussed Knight's death,[19] Ms. Moss asked them what they wanted to do and whether they had considered cremation.[20] They replied that they did not want Knight to be cremated because Knight was a chief of a Nigerian village and must be buried according to traditional rites.[21] They expressed that Plaintiff wanted an autopsy performed and his brother's remains to be embalmed.[22] They also said Plaintiff planned to travel to Georgia to arrange the transportation of his brother's body to Nigeria for burial in accordance with Plaintiff's religious and cultural beliefs.[23] Ms. Moss replied "okay" and said she had to relate their discussion to "Ms. Collette," the "assistant

---

[16] Lewis-Mitchell Aff. at ¶¶5-6, [Doc. 56-2]; Lewis-Mitchell Aff. Ex. at 6-7, [Doc. 56-2] ("At 0023 resident's brother returned writer's call and was notified of resident's status. Brother informed writer that the funeral home of choice would be Moore's Funeral Home."). Plaintiff does not dispute this fact. *See* Pl.'s Cross Mot. Summ. J. ("Statement of Undisputed Material Facts") at 3, ¶ 9 [Doc. 59]; Def. Lewis-Mitchell's Statement Undisputed Material Facts at 2, ¶¶ 3-4, [Doc. 67-1]; Pl.'s Resp. Def. Lewis-Mitchell's Statement Material Facts at 2, [Doc. 74-1] ("Plaintiff authorized transport [to the funeral home] for temporary custody[.]").

[17] Couey Aff. at ¶6, [Doc. 48-9].

[18] Pl.'s Dep. 35:2-8; 64:1-25, 65:1-18 [Doc. 48-3]; Udeh Dep. 31:8-12, [Doc. 48-8].

[19] Udeh Dep. 36:11-25, 37:1-6, 39:25, 40:1-9, [Doc. 48-8].

[20] Pl.'s Dep. 64:1-25, 65:1-18, 70:25, 71:1-24, [Doc. 48-3]; Udeh Dep. 37:4-10, 39:25, 40:1-9, [Doc. 48-8].

[21] Pl.'s Dep. 64:1-25, 65:1-18, 70:25, 71:1-24, [Doc. 48-3]; Udeh Dep. 37:11-25, 38:1-7, 40:10-25, [Doc. 48-8].

[22] Pl.'s Dep. 64:1-25, 65:1-18, 70:25, 71:1-24, 94:7-17, [Doc. 48-3]; Udeh Dep. 38:8-25, 39:1-10; 41:15-25; 48:19-21; 50:16-20, [Doc. 48-8]. Plaintiff testified he did not ask Ms. Moss to arrange the autopsy. Pl.'s Dep. 69:6-17, [Doc. 48-3].

[23] Pl.'s Dep. 64:1-25, 65:1-18, 70:25, 71:1-24, [Doc. 48-3]; Udeh Dep. 38:8-25, 39:1-10; 41:15-25; 50:12-15, [Doc. 48-8].

director" of the nursing home.[24] Ms. Moss then said she would call them back within one hour, but she never did.[25] Later that day, Plaintiff called Bostick, spoke with a receptionist, asked to speak with Bostick's "assistant director" Defendant Collette Lewis-Mitchell, and was told she was not available.[26] On August 12,  August 13, and August 14, Plaintiff called Bostick again, but no one answered.[27] Plaintiff never spoke with Defendant Lewis-Mitchell or any other nursing home administrator at Bostick after Knight's death.[28]

On August 15, 2022, five days after having received Knight's remains from Bostick, Moores had not been contacted by anyone, including Plaintiff or anyone at Bostick, regarding the disposition of Knight's remains.[29] Thus, Defendant Stewart Couey, a funeral director at Moores, contacted Defendant Collette Lewis-Mitchell, a nursing home administrator at Bostick, and Lewis-Mitchell signed an authorization for cremation and disposition form for the cremation of Knight's remains pursuant to Bostick's 2017 cremation services agreement with Moores.[30] On August 15, 2022, Moores cremated Knight's remains.[31]

---

[24] Pl.'s Dep. 65:12-18, [Doc. 48-3]; Udeh Dep. 50:21-25, 51:1-12, 52:15-23. The record indicates Defendant Lewis-Mitchell's job title at Bostick was "nursing home administrator[,]" not assistant director. *See* Scott Aff. ¶7, [Doc. 45-1].

[25] Pl.'s Dep. 72:1-25, 73:1-20, [Doc. 48-3]; Udeh Depo. 53:2-25, 54:1. 55:19-24, [Doc. 48-8].

[26] Pl.'s Dep. 73:16-25, 74:1-21, 75:16-25, 76:1-25, 78:1-13, [Doc. 48-3]; Udeh Depo. 77:7-24, [Doc. 48-8]. Neither Plaintiff nor his wife spoke to Defendant Collette Lewis-Mitchell, a nursing home administrator at Bostick, after Knight's death. Pl.'s Dep. 96:14-22, [Doc. 48-3]; Udeh Depo. 77:7-24, [Doc. 48-8].

[27] Pl.'s Dep. 72:4-25, 73:1-25, 74:1-21 [Doc. 48-3].

[28] Pl.'s Dep. 78:1-25, 79:1-25, 96:14-22, [Doc. 48-3]; Udeh Depo. 77:7-24, [Doc. 48-8].

[29] Couey Aff. at ¶¶7-9; Pl.'s Dep. 82:5-9, [Doc. 48-9].

[30] Couey Aff. at ¶8, [Doc. 48-9]; Lewis-Mitchell Aff. at ¶¶7-8, [Doc. 56-2].

[31] Couey Aff. at ¶8, [Doc. 48-9].

Although Plaintiff had authorized Bostick to transport Knight's body to Moores Funeral Home on August 10, he contends he thought Bostick still had custody of Knight's body until August 15.[32] Plaintiff admits he never attempted to contact Moores or any other funeral home regarding the disposition of his brother's remains.[33]

After Knight was cremated on August 15, 2022, Lewis-Mitchell was notified that Plaintiff's wife had recently called Bostick stating she wanted Knight to be embalmed.[34] Immediately thereafter, Lewis-Mitchell contacted Moores, and Moores was provided with Plaintiff's cellphone number.[35] Funeral Director Couey called Plaintiff, informed him Knight had been cremated that same day,[36] and arranged the delivery of Knight's ashes and death certificate to Plaintiff.[37]

It is undisputed that Plaintiff did not contact Moores or any other funeral home,[38] and he took no other action such as booking travel arrangements to Georgia;[39] contacting the coroner,[40] the medical examiner,[41] or law enforcement regarding his brother's

---

[32] Pl.'s Dep. 65:22-25, 66:1-15, 92:1-16, [Doc. 48-3].

[33] Pl.'s Dep. 92:1-16, [Doc. 48-3]; *see also* Udeh Dep. 61:15-22, [Doc. 48-8].

[34] Lewis-Mitchell Aff. at ¶¶11-12, [Doc. 56-2].

[35] Lewis-Mitchell Aff. at ¶¶11-12, [Doc. 56-2]; Couey Aff. at ¶11, [Doc. 48-9].

[36] Couey Aff. at ¶11, [Doc. 48-9]; Pl.'s Dep. 81:24-25, 82:1-2, 82:18-25, 83:1-25, 84:1-23, [48-3].

[37] Couey Aff. at ¶11, [Doc. 48-9]; Pl.'s Dep. 82:18-25, 83:1-25, 84:1-23, 107:10-15 [Doc. 48-3]. Plaintiff testified his last conversation with anyone at Moores or Bostick occurred on August 15. Pl.'s Dep. 86:4-13, [Doc. 48-3].

[38] Pl.'s Dep. 92:1-16, [Doc. 48-3]; *see also* Udeh Dep. 61:15-22, [Doc. 48-8].

[39] Pl.'s Dep. 92:8-10, [Doc. 48-3]. From August 10 to August 15, Plaintiff states he was making plans to travel to Georgia and to transport Knight's body to Nigeria and was discussing those plans with family and friends. Pl.'s Dep. 66:16-25, 67:1-25, 68:1-9 [Doc. 48-3].

[40] Pl.'s Dep. 92:17-19, [Doc. 48-3].

[41] Pl.'s Dep. 92:20-22, [Doc. 48-3].

remains;[42] or contacting Nigerian officials regarding any necessary paperwork for transporting his brother's remains.[43]

Plaintiff admits he did not enter any agreement with any Defendant regarding Knight's disposition before Knight's cremation.[44] And Plaintiff admits he did not receive any medical treatment or therapy from any medical provider for any emotional distress stemming from his brother's cremation.[45]

## DISCUSSION

Plaintiff asserts claims against the Moores Defendants and Defendant Lewis-Mitchell for (1) interference with the right of burial; (2) negligent mishandling of a corpse;[46] (3) intentional infliction of emotional distress; and (4) negligence and/or negligent infliction of emotional distress.[47] Plaintiff asserts respondeat superior claims against Defendant Bostick for Defendant Lewis-Mitchell's alleged (1) negligent mishandling of a corpse and (2) interference with the right of burial,[48] and he asserts

---

[42] Pl.'s Dep. 92:23-25, [Doc. 48-3].

[43] Pl.'s Dep. 93:1-25, 94:1-6, 95:13-25, 96:1-10 [Doc. 48-3].

[44] Pl.'s Dep. 108:10-25, [Doc. 48-3]; *see also* Couey Aff. at ¶13, [Doc. 48-9]; Lewis-Mitchell Aff. at ¶¶13, 14, [Doc. 56-2]. Plaintiff does not dispute this fact. Pl.'s Resp. Def. Lewis-Mitchell's Statement Material Facts at 4, [Doc. 74-1] ("Plaintiff expressed his wishes to Bostick staff[,] . . . but Defendants proceeded without any agreement to honor those wishes.").

[45] Pl.'s Dep. 105:15-25, [Doc. 48-3]; Pl.'s Dep., Ex. 2 at 2-3, [Doc. 48-5]; Pl.'s Dep., Ex. 3 at 4, [Doc. 48-6].

[46] The Court construed Plaintiff's allegations in his Second Amended Complaint to raise claims for negligent mishandling of a corpse and interference with the right of burial against all defendants and allowed those claims to proceed. Order Pl.'s Mot. Amend Compl. at 11-12, [Doc. 37].

[47] Although this parlance has crept into Georgia caselaw, "[t]here is no independent tort in Georgia for negligent infliction of emotional distress." *Eley v. Fedee*, 362 Ga. App. 618, 624 (2022) (quoting *Holbrook v. Stansell*, 254 Ga. App. 553, 554 (2002)).

[48] *See* Second Am. Compl. at ¶¶ 39-40, [Doc. 35]; *see also* Order Pl.'s Mot. Amend Compl. at 9, [Doc. 37].

direct claims against Defendant Bostick for (1) interference with the right of burial; (2) negligent mishandling of a corpse;[49] and (3) intentional infliction of emotional distress.[50] Plaintiff seeks to recover actual damages for emotional distress and punitive damages from all Defendants. Defendants move for summary judgment on all Plaintiff's claims.

## I. Interference with the Right of Burial

Plaintiff lacks standing to bring his claims for interference with the right of burial. Plaintiff alleges he held as next of kin the private right to bury his brother, and all Defendants interfered with his right on August 15 when Knight was cremated. But because Plaintiff did not exercise his right of disposition within two days of notification of his brother's death, he forfeited his right of disposition under O.C.G.A. § 31-21-7(c)(2) and thus, his common law right of burial on August 12. Because he forfeited his right of burial on August 12, Plaintiff could not suffer an injury to that right on August 15 and therefore lacks standing to assert any interference with right of burial claim. Thus, all Defendants are entitled to summary judgment on Plaintiff's claims for interference with the right of burial.

## A. Plaintiff Forfeited his Right of Disposition on August 12 under O.C.G.A. § 31-21-7(c)(2)

---

[49] *See* Order Pl.'s Mot. Amend Compl. at 7-9, [Doc. 37].

[50] In its Order on Plaintiff's Motion to Amend Complaint, the Court denied Plaintiff's request to assert direct claims for negligent infliction of emotional distress and ordinary negligence against Bostick as futile because Plaintiff failed to state a claim for relief. *Id.* at 6-7.

Enacted in 2009, "O.C.G.A. § 31-21-7 contains extensive provisions dealing with the disposition of a decedent's remains and the arrangement for a decedent's funeral."[51] Section 31-21-7(b) "sets out a priority list of [twelve categories of] persons who can make such arrangements[.]"[52] The decedent's surviving sibling is the person sixth in priority after the decedent's health care agent,[53] designee,[54] surviving spouse,[55] surviving child,[56] and surviving parent.[57] And the Court accepts for the purpose of summary judgment that Plaintiff held the right of disposition of his brother's remains.

But when a qualified person does not timely exercise his or her right, it's forfeited under O.C.G.A. § 31-21-7(c). Section 31-21-7(c) "lists the circumstances in which [any] person named in the preceding categories will forfeit the right to make decisions about the disposition of a decedent's remains."[58] Relevant here, § 31-21-7(c)(2) provides as follows:

> A person entitled under law to the right of disposition shall forfeit that right, and the right is passed on to the next qualifying person as listed in [O.C.G.A. § 31-21-7(b]], in the following circumstance[]: (2) Any person who does not exercise his or her right of disposition *within two days of notification of the death of decedent or within three days of decedent's death, whichever is earlier*[.][59]

---

[51] *Traba v. Levett*, 369 Ga. App. 423, 427 (2023).
[52] *Id.*
[53] O.C.G.A. § 31-21-7(b)(1).
[54] O.C.G.A. § 31-21-7(b)(2).
[55] O.C.G.A. § 31-21-7(b)(3).
[56] O.C.G.A. § 31-21-7(b)(4).
[57] O.C.G.A. § 31-21-7(b)(5); O.C.G.A. § 31-21-7(b)(6).
[58] *Traba*, 369 Ga. App. at 427.
[59] O.C.G.A. § 31-21-7(c)(2) (emphasis added).

10

Thus, "when '[a]ny person does not [timely] exercise his or her right of disposition[,]' the statute provides that [person forfeits] the right of disposition [which] 'is [then] passed on to the next qualifying person as listed in' OCGA § 31-21-7(b)."[60]

The question here is whether Plaintiff exercised his right of disposition within the applicable statutory time-period. O.C.G.A. § 31-21-7 does not expressly define the term "exercise" in the context of "the right of disposition," and although Georgia courts have held a person forfeits their right of disposition under § 31-21-7(c)(2) when they do nothing during the applicable statutory period,[61] they have not identified what acts constitute an "exercise . . . [of the] right of disposition[.]"[62] Thus, this Court must construe "exercise of his or her right of disposition" to determine whether Plaintiff forfeited his right of disposition under § 31-21-7(c)(2). Because § 31-21-7 is a Georgia statute, this Court must apply Georgia's law of statutory construction.[63]

"In construing a statute, [Georgia courts] 'must afford the statutory text its plain and ordinary meaning, . . . view the statutory text in the context in which it appears, and . . . read the statutory text in its most natural and reasonable way[.]'"[64] When a statute does not define a term, Georgia courts "may consider dictionary definitions to discern

---

[60] *Traba*, 369 Ga. App. at 428 (quoting O.C.G.A. § 31-21-7(c)(2)).

[61] *Id.* at 426-28 (holding decedent's surviving siblings forfeited their right of disposition because they took no action within three days of the decedent's death).

[62] O.C.G.A. § 31-21-7(c)(2).

[63] *Mun. Utilities Bd. of Albertville v. Alabama Power Co.*, 21 F.3d 384, 387 (11th Cir. 1994) ("When construing a state statute, we look to state rules of statutory construction, because the same rules of construction apply in a federal court as would apply in a state court."); *see also United States v. Anderson*, 99 F.4th 1106, 1111 (7th Cir. 2024), *reh'g denied*, No. 21-1325, 2024 WL 4767781 (7th Cir. Nov. 13, 2024) (same).

[64] *Smith v. Northside Hosp., Inc.*, 302 Ga. 517, 521 (2017) (quoting *Deal v. Coleman*, 294 Ga. 170, 172–173 (2013)).

11

text's plain and ordinary meaning."[65] Further, "statutes relating to the same subject matter are 'in pari materia' and must be construed together and harmonized whenever possible."[66] As always, "statutory construction must square with common sense and reasoning."[67]

Beginning with the statute's text, § 31-21-7(b) and § 31-21-7(c) address the vesting and forfeiting of "the right of disposition[.]"[68] Under § 31-21-7(b), "the right of disposition" means "the right to control the disposition of the remains of a deceased person; the location, manner, and conditions of disposition; and arrangements for funeral goods and services to be provided[.]"[69] Thus, exercising the right entails "control[ling] the disposition" of a decedent's remains and "arrang[ing] for funeral goods and services to be provided."[70] Normally, the provider of disposition services and other funeral goods and services will be a licensed funeral director of a funeral home because only a funeral director has the ability to lawfully dispose of the decedent's remains.[71] And a person exercises his or her right of disposition by making "instructions" for the decedent's

---

[65] In re *Est. of Cheeley*, 376 Ga. App. 159, 163 (2025).

[66] *Derby Props., LLC v. Watson*, 346 Ga. App. 631, 634 (2018) (quoting *Land USA, LLC v. Ga. Power Co.*, 297 Ga. 237, 241 (2015)).

[67] *Savannah Cemetery Grp., Inc. v. DePue-Wilbert Vault Co.*, 307 Ga. App. 206, 207 (2010) (citing *In the Interest of T.H.*, 258 Ga. App. 416, 420 (2002)).

[68] O.C.G.A. § 31-21-7(b).

[69] O.C.G.A. § 31-21-7(b).

[70] O.C.G.A. § 31-21-7(b).

[71] In almost all private dispositions, the person with the ability to lawfully dispose of the decedent's remains will be a licensed "funeral director" of a "funeral establishment." *See* Ga. Code Ann. § 43-18-1 *et seq*. Nevertheless, an unlicensed individual in Georgia not acting as a funeral director may obtain the ability to lawfully dispose of a decedent's remains if that person receives a disposition permit. *See* Ga. Comp. R. & Regs. 511-1-3-.23. Here, Plaintiff did not have a burial or transit permit before Knight's cremation. Pl.'s Dep. 93:20-25, [Doc. 48-3].

disposition.[72] He or she must "assume the responsibilities to act and arrange the final disposition of the decedent's remains[.]"[73] Although O.C.G.A. § 31-21-7 does not define "final disposition," O.C.G.A. § 31-21-7 and O.C.G.A. § 10-14-3 address the same subject matter—the provision of burial and funeral services—and must be construed together.[74] O.C.G.A. § 10-14-3 defines "final disposition" as "the final disposal of a deceased human being whether by interment [(meaning burial)], . . . cremation, or any other means[.]"[75]

Thus, a person normally "exercise[s] his or her right" to "control the disposition of a [decedent's remains]" by contacting and "instruct[ing]" a funeral director of a funeral home to finally dispose of them in a certain "manner," at a certain "location," and under certain "conditions."[76] If a person fails to accomplish this "within two days of notification of the death of decedent or within three days of decedent's death, whichever is earlier," that person forfeits his or her right.[77]

Because Bostick contacted and notified Plaintiff of his brother's death on August

---

[72] *See e.g.,* O.C.G.A. § 31-21-7(b)(6) (providing a decedent's surviving siblings must "notify all other surviving siblings of their instructions" under certain circumstances).

[73] O.C.G.A. § 31-21-7(b)(12).

[74] *See Derby Props., LLC,* 346 Ga. App. at 634. In addition, O.C.G.A. § 31-21-7 also governs "pre-need contracts" for funeral and burial services and expressly incorporates O.C.G.A. § 10-14-3's definition of "pre-need contracts." O.C.G.A. § 31-21-7(a).

[75] O.C.G.A. § 10-14-3(15); *see also* O.C.G.A. § 43-18-1(9) ("'Final disposition' means the final disposal of a dead human body whether it is by, but not limited to, earth interment, above-ground interment, cremation, organic human reduction, burial at sea, or delivery to a medical institution for lawful dissection if such medical institution assumes responsibility for disposal."). "'Interment' means burial[.]" O.C.G.A. § 10-14-3(20).

[76] O.C.G.A. § 31-21-7(b)-(c). Moreover, if the person holding the right seeks to finally dispose of an *embalmed* body by burial, as is true here, he or she must also contact and instruct a licensed embalmer—who may also be a licensed funeral director—to arrange the final disposition and thus, to exercise his or her right, because embalmment must occur before burial and only a licensed embalmer can embalm a dead body. O.C.G.A. § 43-18-3(a); O.C.G.A. § 43-18-40. Plaintiff admits he did not communicate with any coroner or funeral home about having Decedent embalmed before Knight's cremation. Pl.'s Dep. 95:13-16, [Doc. 48-3].

[77] O.C.G.A. § 31-21-7(c)(2).

10, Plaintiff was required to exercise his right of disposition by August 12, two days after he received notice, or else forfeit that right under § 31-21-7(c)(2).[78] On August 10, Plaintiff authorized Defendant Bostick to transfer his brother's body to Moores Funeral Home, and Moores Funeral Home received custody of Knight's body that same day. Plaintiff did not attempt to contact and did not communicate with any funeral home until August 15—after Knight's cremation.[79]

The record shows Plaintiff took two actions within the two-day time-period: (1) he authorized Bostick to transfer Knight's body to Moores on August 10 and (2) because he thought Bostick still had custody of Knight's remains, he expressed his disposition wishes to a visiting social worker at Bostick on August 12.[80] But these actions are insufficient to qualify as "exercising" the right of disposition under § 31-21-7(c)(2). First, authorizing the transfer of a decedent's body from a nursing home to a funeral home does not rise to arranging its final disposition. Transporting a body does not finally dispose of it. Second, expressing one's disposition wishes to a person who cannot lawfully dispose of the decedent's body is not arranging its final disposition. To arrange the final disposition, one must speak with a person who can finally dispose of the body, and that person is a licensed funeral director of a funeral home, not a visiting social worker at a nursing home.

---

[78] Alternatively, Plaintiff did not exercise his right of disposition by August 13, three days after his brother's death, and thus, forfeited that right under O.C.G.A. § 31-21-7(c)(2) before August 15.

[79] Pl.'s Dep. 92:1-16, [Doc. 48-3]; *see also* Udeh Dep. 61:15-22, [Doc. 48-8].

[80] Lewis-Mitchell Aff. at ¶¶5-6, [Doc. 56-2]; Lewis-Mitchell Aff. Ex. at 6-7, [Doc. 56-2]; Pl.'s Cross Mot. Summ. J. ("Statement of Undisputed Material Facts") at 3, ¶ 9 [Doc. 59]; Def. Lewis-Mitchell's Statement Undisputed Material Facts at 2, ¶¶ 3-4, [Doc. 67-1]; Pl.'s Resp. Def. Lewis-Mitchell's Statement Material Facts at 2, [Doc. 74-1] ("Plaintiff authorized transport [to the funeral home] for temporary custody[.]"); Pl.'s Dep. 64:1-25, 65:1-25, 66:1-8, 92:1-7, [Doc. 48-3].

The fact that Plaintiff thought Bostick, not Moores Funeral Home, had custody of Knight's remains is immaterial because Plaintiff could have arranged the final disposition of his brother's remains by contacting and instructing any other funeral home's licensed funeral director, but he did not attempt to do so.

Because Plaintiff did not timely exercise his right of disposition, he forfeited that right under § 31-21-7(c)(2) on August 12.

**B. Plaintiff Lacks Standing Because He Suffered No Injury on August 15**

Because Plaintiff forfeited his statutory right of disposition under § 31-21-7(c)(2) and thus his identical common law right of burial on August 12, Plaintiff lacks standing to bring his interference with the right of burial claims arising from Defendants' alleged interference on August 15. Put simply, Plaintiff could not suffer an injury to his right of burial on August 15 because he forfeited that right three days earlier on August 12.

"To establish standing, . . . a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief."[81] "[T]he plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or "hypothetical[.]"[82]

Under Georgia law, "an unlawful and unwarranted interference with the exercise

---

[81] *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024).
[82] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

of the right of burial is a tort."[83] To prove a claim for interference with the right of burial,[84] the plaintiff must show: (1) he or she held the private right to determine time, manner, and place of the burial (or disposition) of the decedent's remains;[85] and (2) the defendant willfully or wantonly interfered with the plaintiff's exercise of that right.[86]

Georgia courts have long held "[a]t common law, . . . the person having th[e] duty to bury the deceased also ha[d] the concomitant right to give the body a 'decent' burial[.]"[87] "This [common law] right of burial ordinarily include[d] the right to determine the time, manner and place of burial."[88] At common law, "[t]his right of burial belong[ed] to the surviving spouse of the deceased and devolve[d] upon the next of kin of the deceased only if no spouse survive[d]."[89] In sum, the surviving spouse or next of kin "had the private right to bury or dispose of [their decedent's] remains[,]" and a funeral home with custody of those remains "owed [the surviving spouse or next of kin]

---

[83] *Moore v. Lovein Funeral Home, Inc.*, 358 Ga. App. 10, 16 (2020) (quoting *Habersham Mem'l Park, Inc. v. Moore*, 164 Ga. App. 676, 678 (1982)).

[84] Notably, O.C.G.A. § 31-21-7 does not expressly provide any cause of action. Thus, the cause of action for the interference with the right of burial provided under common law remains valid subject to § 31-21-7's provisions regarding the vesting and forfeiting of the statutory right of disposition.

[85] *See Traba*, 369 Ga. App. at 427-29; *see also* 4 Restatement (Second) of Torts § 868 (1979) ("One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased *who is entitled to the disposition of the body*.") (emphasis added); *Amaker v. King Cnty.*, 540 F.3d 1012, 1015 (9th Cir. 2008) (citing 4 Restatement (Second) of Torts § 868 (1979)).

[86] *See Moore*, 358 Ga. App. at 16. To prove willful or wanton conduct, the plaintiff must show a defendant's acts "evidence[d] a willful intention to inflict the injury[] or else were so reckless or so charged with indifference to the consequences as to justify finding a wantonness equivalent in spirit to actual intent." *Id.* (quoting *McNeal Loftis, Inc. v. Helmey*, 218 Ga. App. 628, 629 (1995)); *see also Just. v. SCI Georgia Funeral Servs., Inc.*, 329 Ga. App. 635, 637 (2014) (same).

[87] *Habersham Mem'l Park, Inc. v. Moore*, 164 Ga. App. 676, 680 (1982) (citing *Wright v. Hollywood Cemetery Corp.*, 112 Ga. 884 (1901); *Stephens v. Waits*, 53 Ga. App. 44 (1936)).

[88] *Id.* at 680; *see also Pyle v. Pyle*, 243 Ga. App. 398, 400 (2000) (same).

[89] *Moore*, 358 Ga. App. at 16 (2020) (quoting *Habersham*, 164 Ga. App. at 680).

16

the duty not to wilfully or wantonly interfere with the burial [or disposal] of [the decedent's remains]."[90]

By all appearances, the Georgia General Assembly in effect modified the common law "right of burial" in 2009 by enacting O.C.G.A. § 31-21-7 because the statutory "right of disposition" encompasses the same "right to determine the disposition of a decedent's remains[]" as the common law "right of burial," but it may vest in persons other than and before the surviving spouse or next of kin.[91] Thus, the person holding the "right of disposition" under § 31-21-7 necessarily holds the common law "right of burial," and a surviving spouse or next of kin who forfeits their "right of disposition" under § 31-21-7(c)(2) necessarily forfeits their common law "right of burial" and thus, has no standing to assert any claim for interference with that right.[92] Indeed, in *Traba v. Levett*, the Georgia

---

[90] *Id.* at 16 (quoting *Pyle*, 243 Ga. App. at 400 (2000)).

[91] *See Traba*, 369 Ga. App. at 427-29; *compare* O.C.G.A. § 31-21-7(b) *with Habersham*, 164 Ga. App. at 678, 680 *and Moore*, 358 Ga. App. at 16. The common law right of burial included "the right to determine the time, manner and place of burial," and the statutory right of disposition grants "the [same] right to control . . . the location, manner, and conditions of disposition." *Pyle*, 243 Ga. App. at 400; O.C.G.A. § 31-21-7(b). In addition, "[a] right of action existing at common law may be modified or abrogated by the legislature." *Georgia Lions Eye Bank, Inc. v. Lavant*, 255 Ga. 60, 61 (1985); *see also Taylor v. Devereux Found., Inc.*, 316 Ga. 44, 62 (2023) ("[T]he Legislature has authority to modify or abrogate the common law[.]") (quoting *Atlanta Oculoplastic Surgery, P.C. v. Nestlehutt*, 286 Ga. 731, 736 (2010)). Moreover, because § 31-21-7(c)(2) specifies "[a] person *entitled under law* to the right of disposition shall forfeit that right" if that person does not timely exercise it, § 31-21-7 indicates its forfeiture provision applies to rights conferred under the common law as well as § 31-21-7. O.C.G.A. § 31-21-7(c)(2) (emphasis added).

[92] To illustrate this, consider the following hypothetical. Under O.C.G.A. § 31-21-7(b)(2), Alfred designated Carl, his non-relative friend, as the person with the right to control the disposition of his remains. Alfred dies, and his wife, Brenda, survives him. Under O.C.G.A. § 31-21-7(b), Carl, as Alfred's designee, has priority over Brenda, Alfred's surviving spouse. Carl wishes to cremate Alfred's remains, but Brenda wishes to bury Alfred's remains. Under § 31-21-7, Carl's right of disposition controls, and Carl may direct a funeral director to cremate Alfred's remains despite Brenda's expressed wishes. As a result, Brenda lacks any right to bury her husband because § 31-21-7 has superseded the common law "right of burial." Thus, neither Carl nor the funeral director Carl directs to cremate Alfred's remains could interfere with Brenda's nonexistent common law "right of burial." Under the common law, the surviving spouse's wishes would control, but under § 31-21-7, the non-relative designee's wishes control.

Court of Appeals held a decedent's next of kin suffered no injury and thus lacked standing to bring a claim for tortious interference with burial rights against a funeral home and crematorium because the plaintiffs forfeited their "right of disposition" under O.C.G.A. § 31-21-7(c)(2) before the defendants cremated the decedent's remains against their wishes.[93]

Here, Plaintiff asserts all Defendants interfered with his exercise of his private right as next of kin to bury his brother's remains on August 15 when Defendant Lewis-Mitchell signed the cremation authorization form on behalf of Defendant Bostick and the Moores Defendants cremated Plaintiff's brother. But Plaintiff forfeited his statutory "right of disposition" and thus, his common law "right of burial" on August 12 before Defendant Lewis-Mitchell signed the form and the Moores Defendants cremated his brother on August 15. Because Plaintiff had no right of burial on August 15, he could not suffer any injury and therefore lacks standing to assert Defendants interfered with his "right of burial."[94] Thus, all Defendants are entitled to summary judgment on all Plaintiff's claims for interference with the right of burial.

## II. Negligent Mishandling of a Corpse

Because Plaintiff fails to show he entered an agreement with any Defendant to

---

[93] *Traba*, 369 Ga. App. 423. In their appellate brief, the appellants specifically argued the trial court erred by ruling "[t]hat [a]ppellants 'have no standing' to complain of the tortious interference with the right to burial committed by defendants." Brief of Appellants, *Traba v. Levitt*, 369 Ga. App. 423 (2023), 2023 WL 2949012, at *4. The *Traba* Court expressly rejected the appellants' argument and upheld the trial court's judgment. 369 Ga. App. at 429.

[94] *See Traba*, 369 Ga. App. at 428-429.

carry out his expressed wishes for his brother's disposition before the cremation, Plaintiff cannot meet the second element of his negligent mishandling of a corpse claims.

A claim for negligent mishandling of a corpse has two elements: (1) "the 'quasi-property' right that exists in the dead body of a relative[;]" and (2) "the negligent breach of a contract to carry out the expressed wishes of the next of kin regarding the disposition of that dead body, i.e., burial, cremation, or anatomical donation."[95] To satisfy the second element, the "plaintiff must show the existence of some agreement where the family members of the decedent expressed their wishes regarding the disposition of the decedent's body[.]"[96] In other words, the plaintiff must "establish that they had entered into an express or implied agreement with the [defendant] regarding the disposition of [the decedent's] body prior to [the defendant's alleged negligent conduct.]"[97] Thus, the plaintiff must show some "contractual obligation on the part of the [defendant] to carry out [the plaintiff's] subjective wishes concerning the burial of their [decedent]."[98]

Plaintiff states "[he] expressed his wishes to Bostick's staff but Defendants proceeded without any agreement to honor those wishes."[99] But no express or implied agreement was formed between Plaintiff and Bostick concerning Knight's disposition when Plaintiff expressed his wishes to Bostick's visiting social worker on August 12. "A

---

[95] *Wages v. Amisub of Georgia*, 235 Ga. App. 156, 157 (1998) (brackets omitted) (quoting *McCoy v. Ga. Baptist Hosp.*, 167 Ga. App. 495, 497 (1983)); *see also Bd. of Regents v. Oglesby*, 264 Ga. App. 602, 607 (2003) (same).

[96] *Wages*, 235 Ga. App. at 157–58.

[97] *Id.* at 158.

[98] *McCoy v. Ga. Baptist Hosp.*, 167 Ga. App. 495, 497 (1983).

[99] Pl.'s Resp. Def. Lewis-Mitchell's Statement Material Facts at 4, [Doc. 74-1]. Although he contends this fact is irrelevant to his claims, Plaintiff does not dispute that "he did not have any agreement with any Defendants for the disposition of his brother's remains." Pl.'s Resp. Def. Lewis-Mitchell's Statement Material Facts at 4, [Doc. 74-1]; *see also* Pl.'s Dep. 108:10-25, [Doc. 48-3]; *see also* Couey Aff. at ¶13, [Doc. 48-9]; Lewis-Mitchell Aff. at ¶¶13, 14, [Doc. 56-2].

19

contract is an agreement between two or more parties for the doing or not doing of some specified thing."[100] "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate."[101] "Under Georgia law, '[t]here cannot be an express and implied contract for the same thing existing at the same time between the same parties.'"[102] "[C]ontracts implied in fact depend upon the will of the parties to be bound, indicated ... by circumstances from which assent may be inferred as a conclusion of fact."[103]

First, Plaintiff did not enter an express oral contract with Bostick because Bostick's social worker acting as Bostick's agent did not assent to carrying out his wishes by merely replying "okay" and saying she needed to discuss his wishes with the nursing home administrator, and no consideration moved between the parties. Second, Plaintiff did not enter an implied contract with Bostick because Bostick did not act as if it intended to be bound to carry out Plaintiff's expressed disposition wishes, and no consideration moved between the parties. Thus, no express or implied agreement between Plaintiff and Bostick existed concerning Knight's disposition before his cremation. Moreover, it is undisputed Plaintiff did not communicate with Defendant Lewis-Mitchell or the Moores Defendants during the time between Knight's death and his cremation; thus, Plaintiff could not have entered an express or implied agreement with either of them concerning the disposition

---

[100] *Bland v. Urology of Greater Atlanta, LLC,* 921 S.E.2d 779, 786 (Ga. Ct. App. 2025) (quoting OCGA § 13-1-1.).
[101] *Id.* (quoting OCGA § 13-3-1).
[102] *Clary v. Allstate Fire & Cas. Ins. Co.,* 340 Ga. App. 351, 357 (2017) (quoting *Georgia Real Estate Properties, Inc. v. Lindwall,* 303 Ga. App. 12, 15 (2010)).
[103] *Bland,* 921 S.E.2d at 786 (quoting *Butts County v. Jackson Banking Co.,* 129 Ga. 801, 808 (1908)).

of Knight's remains.

Because Plaintiff did not enter any express or implied agreement with any Defendant concerning Knight's disposition before his cremation on August 15, Plaintiff cannot show any Defendant negligently breached a contract regarding his brother's disposition. As a result, all Defendants are entitled to summary judgment on all Plaintiff's claims for negligent mishandling of a corpse.

### III. Intentional Infliction of Emotional Distress

Because no evidence shows Plaintiff suffered severe emotional distress, Defendants are entitled to summary judgment on all Plaintiff's claims for intentional infliction of emotional distress.

To prove a claim for intentional infliction of emotional distress, the plaintiff must show the following elements: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe."[104] "The [emotional] distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress."[105] "Emotional distress can take the form of 'highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. [But] [i]t is only

---

[104] *Moore v. Lovein Funeral Home, Inc.*, 358 Ga. App. 10, 17 (2020) (quoting *Hill v. City of Fort Valley*, 251 Ga. App. 615, 616 (2001)).

[105] *Doe v. Roe*, 362 Ga. App. 23, 30 (2021) (quoting *Sevcech v. Ingles Mkts.*, 222 Ga. App. 221, 223-224 (1996)).

where it is *extreme* that liability arises.'"[106] Thus, the plaintiff's burden is "a stringent one."[107] "Whether severe emotional distress can be found, based on the evidence presented, is a question for the court to decide[.]"[108]

Plaintiff "has not satisfied the fourth required element of a claim for intentional infliction of emotional distress—showing that the emotional distress [he] allegedly suffered was [so] severe . . . that no reasonable person could be expected to endure it."[109] "Even such physical manifestations as sleeplessness, anxiety, and headaches, standing alone, are not 'so severe that no reasonable person could be expected to endure them.'"[110] To meet his stringent burden, "[Plaintiff] must show, at the very least, that physical and/or mental manifestations of that distress required h[im] to seek medical or psychological treatment."[111]

Plaintiff alleges that he suffered "severe emotional distress[,]"[112] and he testified after learning his brother had been cremated, he "[could not] speak well," "could not

---

[106] *Ghodrati v. Stearnes*, 314 Ga. App. 321, 324 (2012) (quoting *Southland Propane v. McWhorter*, 312 Ga. App. 812, 819 (2011)) (emphasis in original).

[107] *Mayorga v. Benton*, 364 Ga. App. 665, 670 (2022) (quoting *Racette v. Bank of America*, 318 Ga. App. 171, 179 (2012)).

[108] *Doe v. Roe*, 362 Ga. App. 23, 30 (2021) (quoting *The Plantation at Bay Creek Homeowners Assn. v. Glasier*, 349 Ga. App. 203, 212 (2019)); *see also Ghodrati*, 314 Ga. App. at 323 ("Whether a claim of severe emotional distress is found is a question for the court.").

[109] *Doe*, 362 Ga. App. at 30.

[110] *Jefferson v. Houston Hosps., Inc.*, 336 Ga. App. 478, 485 (2016) (holding plaintiffs failed to produce evidence of severe emotional distress when they claimed anxiety, depressed mood, and/or sleeplessness because they did not enumerate any specific psychological symptoms and did not seek any medical treatment) (citing *Abdul-Malik v. AirTran Airways, Inc.*, 297 Ga. App. 852, 858 (2009); *Jones v. Warner*, 301 Ga. App. 39, 43 (2009)).

[111] *Doe v. Roe*, 362 Ga. App. 23, 31 (2021) (quoting *Howerton v. Harbin Clinic, LLC*, 333 Ga. App. 191, 207-08 (2015)).

[112] *See* Second Am. Compl., [Doc. 35] (alleging he has suffered "severe emotional distress"); *see also* Pl. Dep. Ex. 2 at 2-3, [Doc. 48-5] (stating his brother's cremation caused him "cultural trauma").

sleep[,]" and took off from work at that time.[113] But Plaintiff neither alleges nor produced any evidence that his emotional distress caused any severe physical manifestations, specific psychological symptoms, or medical or psychological conditions (or diagnoses).[114] Indeed, he admitted he had not sought "any formal medical treatment or therapy from any medical provider for [his] emotional distress."[115] In his response to a Defendant's production request, he stated that "[he]  receives counseling through spiritual therapy,"[116] but he failed to produce any record of his counselor's diagnosis or treatment.[117] In fact, in his supplemental response to produce "[a]ll documents reflecting Plaintiff's emotional distress, including but not limited to treatment related thereto,"[118] Plaintiff stated categorically that "[t]here has been no treatment received[.]"[119] And he admitted he had not received "any responsive care" in his supplemental response to an interrogatory.[120]

Under Georgia law on summary judgment, a plaintiff may not exclusively rely on alleged symptoms of emotional distress; he must produce some "evidence showing that

---

[113] Pl.'s Dep. 86:17-23, [Doc. 48-3]. Plaintiff did not specify the severity or duration of his speechlessness or sleeplessness. *Id.* He also did not specify the length of time he took off from work. *Id.*

[114] *See* Second Am. Compl., [Doc. 35].

[115] Pl.'s Dep. 105:15-25, [Doc. 48-3]; *see also* Pl. Dep. Ex. 2 at 2-3,[Doc. 48-5] ("I have not sought formal medical or mental health treatment specifically for injuries related to the improper disposition of the decedent's remains.").

[116] Pl. Dep. Ex. 1 at 1-2, [Doc. 48-4]. Defendants requested Plaintiff produce "[a]ll records relating to treatment by any physician, therapist, psychologists, psychiatrists, or other healthcare professional for any injuries or condition allegedly resulting from the events complained about in this action[.]" *Id.* Plaintiff responded as follows: "Plaintiff receives counseling through spiritual therapy." *Id.* Plaintiff thus failed to provide any record of his "spiritual therapy." *Id.*

[117] Pl. Dep. Ex. 1 at 1-2, [Doc. 48-4].

[118] Pl. Dep. Ex. 3 at 4, [Doc. 48-6].

[119] *Id.*

[120] *Id.* at 1.

[he] has taken medication or sought professional treatment for [his] . . . alleged conditions[.]"[121] Accordingly, Georgia courts look to whether the plaintiff has offered "supporting evidence" such as a "record of a counselor's diagnosis" (or other record of professional treatment) and consider whether the plaintiff delayed seeking treatment or received a formal diagnosis from a treatment provider.[122] Plaintiff cannot make this showing because he does not allege he took any medication and admits he did not seek any professional medical or psychological treatment. Even if Plaintiff's "counseling through spiritual therapy" qualifies as professional medical or psychological treatment under Georgia law, his claim still fails because he offers no supporting evidence for this informal counseling and does not allege when he first received this counseling or whether he received any diagnosis. And "[w]hile unpleasant, [Plaintiff's] alleged [sleeplessness] and [speechlessness] are not so severe that no reasonable person could be expected to

---

[121] *See Doe v. Roe*, 362 Ga. App. 23, 31 (2021) (holding plaintiff failed to produce evidence of severe emotional distress when she claimed anxiety, depression, suicidal thoughts, weight loss, hair loss, and diabetes complications because she did not take medication or receive any professional treatment or diagnosis for her symptoms); *see also Herzler v. Herzler*, 368 Ga. App. 624, 629 (2023) (holding plaintiff failed to demonstrate severe emotional distress because the plaintiff "neither alleged nor pointed to any evidence to show that he suffered severe emotional distress or that he sought medical or psychiatric treatment for such distress"); *Plantation at Bay Creek Homeowners Ass'n, Inc. v. Glasier*, 349 Ga. App. 203, 212 (2019) (holding plaintiff failed to produce evidence of severe emotional distress even though she suffered from headaches, mentioned her headaches to her physician, and feared for her and her children's safety); *Jones v. Fayette Fam. Dental Care, Inc.*, 312 Ga. App. 230, 718 S.E.2d 88 (2011) (holding plaintiff failed to produce evidence of severe emotional distress because she suffered no physical ailments other than decreased sex drive and did not seek any form of treatment); *Abdul-Malik v. AirTran Airways, Inc.*, 297 Ga. App. 852, 858  (2009) (holding plaintiff failed to produce evidence of severe emotional distress when plaintiff alleged he suffered from sleeplessness and weight gain but did not take medication or seek professional help); *Odem v. Pace Academy*, 235 Ga. App. 648, 656 (1998) (emotional distress was not severe when plaintiff alleged stress, humiliation, and high blood pressure but sought no professional advice from doctors or counselors).

[122] *See Doe v. Roe*, 362 Ga. App. 23, 31 (2021); *Ghodrati v. Stearnes*, 314 Ga. App. 321, 324 (2012) (affirming the trial court's holding that the plaintiff did not meet his burden even though he testified he suffered from anxiety and sleepless and received counseling because the plaintiff did not seek counseling until long after the defendant's conduct and did not produce any record of a counselor's diagnosis).

24

endure them."[123]

Plaintiff contends cremation violates his cultural and religious beliefs, his Nigerian family members expected his brother's body to be returned for burial rites,[124] and he will establish "his emotional distress and cultural trauma . . . through testimony and expert evidence [on the subject of Nigerian culture] rather than through medical documentation."[125] But evidence that his brother's cremation violated his personal cultural and religious beliefs and caused him "cultural trauma[]" is insufficient to show that he suffered emotional distress so severe no reasonable person could endure it. Plaintiff must support such allegations with evidence of some professional medical or psychological treatment for physical or mental symptoms of emotional distress on summary judgment, and he has failed to do so.[126]

"Given the lack of supporting evidence and '[his] failure to seek medical or psychiatric treatment for [his alleged emotional distress], [Plaintiff] has not met the stringent burden of showing that [his] distress was sufficiently severe.'"[127] As a result, Defendants are entitled to summary judgment on all Plaintiff's claims for intentional

---

[123] *Doe v. Roe*, 362 Ga. App. 23, 31 (2021) (brackets omitted) (quoting *Abdul-Malik*, 297 Ga. App. at 858); *see also Abdul-Malik*, 297 Ga. App. at 858 ("While unpleasant, the [alleged] sleeplessness and weight gain [were] not so severe that no reasonable person could be expected to endure them."); *Witter v. Delta Airlines*, 966 F. Supp. 1193, 1201 (N.D.Ga.1997), *aff'd*, 138 F.3d 1366 (11th Cir.1998) (holding anxiety, sleeplessness, overeating, diarrhea and headaches, were not severe).

[124] Pl.'s Mot. Summ. J. at 4, [Doc. 50] ("The unauthorized cremation prevented Plaintiff from fulfilling his cultural and religious obligations to his brother and caused irreparable harm to family traditions and mourning practices."); Pl. Dep. Ex. 2 at 6, [Doc. 48-5].

[125] Pl. Dep. Ex. 2 at 2-3, 6, [Doc. 48-5]. Plaintiff states he plans to call an expert in Nigerian culture at trial to establish "the significant cultural and spiritual harm caused by cremation, which is contrary to Igbo beliefs and practices." *Id.* at 3.

[126] *See Doe v. Roe*, 362 Ga. App. 23, 31 (2021).

[127] *Doe v. Roe*, 362 Ga. App. 23, 31 (2021) (cleaned up) (quoting *Jones v. Warner*, 301 Ga. App. 39, 43 (3) (2009)).

infliction of emotional distress.

### IV. Negligence and/or Negligent Infliction of Emotional Distress

Finally, because Georgia's impact rule bars all Plaintiff's claims in negligence, Defendants are entitled to summary judgment on all Plaintiff's claims for negligence and/or negligent infliction of emotional distress.

In Georgia, a person cannot recover damages for emotional distress caused by negligence without satisfying the impact rule.[128] To satisfy the impact rule, the plaintiff must show all three elements: "(1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress."[129]

There are "three circumstances" in which the impact rule does not apply.[130] First, "[i]n cases where mere negligence is not relied on, but the conduct complained of is malicious, wilful, or wanton, mental pain and suffering may be recovered without application of the impact rule, provided that it is directed toward the plaintiff[.]"[131] This exception to the impact rule can only apply to independent torts, not to "ordinary negligence" or "gross negligence" claims.[132] Second, a parent may recover damages for

---

[128] *Mayorga v. Benton*, 364 Ga. App. 665, 675 (2022).

[129] *Id.* (quoting *Eley v. Fedee*, 362 Ga. App. 618, 622 (2022)) ("A failure to meet any one of these requirements is fatal to a recovery of damages for mental suffering.").

[130] *Id.* at 676 (quoting *Eley*, 362 Ga. App. at 623).

[131] *Id.* (quoting *Eley*, 362 Ga. App. at 623).

[132] *Id.* at 676 n.11 ("[T]he impact rule precludes recovery for 'gross negligence' in addition to ordinary negligence.") (citing *Crosby v. Comcast Corp.*, 284 Ga. App. 841, 842 (2007)); *see also Eley v. Fedee*, 362 Ga. App. 618, 624 (2022) (same). The cases cited as authorities for this exception evaluated its applicability only in reference to intentional infliction of emotional distress claims or claims for other independent intentional torts. *See Eley*, 362 Ga. App. at 624 (citing *Montega Corp. v. Hazelrigs*, 229 Ga. 126, 127 (1972)); *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 584 n.2 (2000)) (citing *Ryckeley v. Callaway*, 261 Ga. 828, 828 (1992)); *Montega*,

emotional distress under a specific circumstance not relevant here.[133] Third, "the pecuniary loss rule provides for a[n] [additional] circumstance in which the impact rule does not apply."[134]

Here, Plaintiff does not allege any physical impact, and his claims do not fall within any of the impact rule's exceptions.[135] Plaintiff does not allege he suffered any pecuniary loss, and he relies on negligence to recover emotional distress damages.[136] Because Plaintiff does not allege any physical impact or pecuniary loss and relies on negligence (whether ordinary or gross) to recover emotional distress damages, the impact rule bars all Plaintiff's ordinary negligence, "gross negligence," and/or "negligent infliction of emotional distress" claims.[137]

## CONCLUSION

For the reasons explained above, all Defendants are entitled to summary judgment. Thus, the Court **GRANTS** the Defendants' Motions for Summary Judgment [Docs. 48, 67, 77] and **DENIES** Plaintiff's Motions for Summary Judgment [Docs. 50, 59]. The Court **DIRECTS** the Clerk to enter judgment in favor of Defendants.

---

229 Ga. at 127 (applying exception to intentional trespass to property claim); *Ryckeley*, 261 Ga. at 828 (evaluating exception with respect to an intentional infliction of emotional distress claim). Said differently, a claim for emotional distress caused by negligence - whether ordinary or gross – cannot meet this exception.

[133] *Mayorga*, 364 Ga. App. at 676 (quoting *Eley*, 362 Ga. App. at 623).

[134] *Id.*

[135] *See* Second Am. Compl., [Doc. 35].

[136] *See* Second Am. Compl., [Doc. 35]; *see also* Pl.'s Dep. 109:12-20, [Doc. 48-3]; Pl.'s Dep., Ex. 3 at 4, [Doc. 48-6] ("No financial damages document exist[s].").

[137] Plaintiff alleges all defendants' negligent conduct was "reckless" and "egregious and outrageous." Second Am. Compl., [Doc. 35]. To the extent Plaintiff asserts "gross negligence" claims (distinct from his intentional infliction of emotional distress claims), the physical impact rule bars those claims. *Id.*

**SO ORDERED,** this 12th day of March, 2026.

s/ C. Ashley Royal_____
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT